BROWN DRUG CO. et al. v. UNITED STATES et al.

(District Court, N. D. Iowa, W. D.   October 2, 1916.)

No. 46.

1. COURTS ☞101—INTERSTATE COMMISSION—RATES—INJUNCTION—JURISDIC-
TION OF COURT.

In a suit against the Interstate Commerce Commission and carriers to
prevent enforcement of new rates, where there is an application for a
temporary injunction, and the District Judge calls in two other judges,
one of them being a Circuit Judge, to dispose of such application, the
court as constituted is without jurisdiction to dispose of the case on the
merits.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 344–350, 629; Dec.
Dig. ☞101.]

2. COMMERCE ☞96—INTERSTATE COMMISSION—TEMPORARY INJUNCTIONS—
RIGHT TO.

Where new rates permitted by the Interstate Commerce Commission
would work injury and possibly discrimination against towns in South
Dakota, while the previous existing rates worked injury and possibly had
for several years discriminated against a town in Iowa, a temporary in-
junction pending a suit against enforcement of the rates, will not be
granted, the court being unable to measure the respective injuries, and
the order of the Interstate Commerce Commission being presumptively
valid.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 146; Dec. Dig.
☞96.]

Reed, District Judge, dissenting.

Action by the Brown Drug Company and others against the United
States of America, the Interstate Commerce Commission, the Ameri-
can Express Company, and others, seeking to enjoin the putting into
effect of certain express rates in South Dakota. On order to show
cause why temporary injunction should not issue against defendants.
Injunction denied.

Thomas H. Null, of Huron, S. D., and Edward E. Wagner, of Sioux
Falls, S. D., for plaintiffs.

Blackburn Esterline, Sp. Asst. Atty. Gen., for the United States.

Charles W. Needham, of Washington, D. C., for Interstate Com-
merce Commission.

SMITH, Circuit Judge.   In this case the government and the Inter-
state Commerce Commission have entered a special appearance and
plea to the jurisdiction to hear the application for a temporary writ
of injunction.   The Sixty-First Congress (Act March 3, 1911, c. 231,
§ 207, 36 Stat. 1146, 1148 [Comp. St. 1913, § 993]) provided that:

"The Commerce Court shall have the jurisdiction possessed by Circuit
Courts of the United States and the judges thereof immediately prior to
June eighteenth, nineteen hundred and ten, over all cases of the following
kinds: * * * Second. Cases brought to enjoin, set aside, annul, or sus-
pend in whole or in part any order of the Interstate Commerce Commission."

This vested general jurisdiction in this class of cases in the Com-
merce Court.   It was further provided (page 1149, § 996):

"The jurisdiction of the Commerce Court shall be invoked by filing in the office of the clerk of the court a written petition setting forth briefly and succinctly the facts constituting the petitioner's cause of action, and specifying the relief sought."

I shall ask my Associates upon the bench to express their views in this case, and therefore in what I say I am expressing my own views.

In my judgment all that is necessary to invoke the jurisdiction of the Court of Commerce under this old law is the filing of this petition. The word "invoke" is defined by Webster's New International Dictionary as:

"To call on for aid or protection; to invite earnestly or solemnly, as in prayer; to solicit or demand by invocation, as to invoke the Supreme Being, or to invoke His aid; to appeal to, or cite, as authority or for support."

The Standard Dictionary defines it in the fifth heading, referring to the law, "To call for by judicial process; as, to invoke papers into court." The Century Dictionary defines it in law as, "To call for judicially; as to invoke deposition or evidence," and it gives the synonyms for the word "invoke" used other than as a law term as "to implore, supplicate, adjure, solicit, beseech." This substantially explains the meaning of the word "invoke" as used in the statute. It then provided that in place of serving a subpœna upon the government, as it might have done, the service upon the government should be by filing a copy of said petition in the office of the Secretary of the Interstate Commerce Commission and in the Department of Justice.

This same law provided by section 208 of the act, page 1149 (Comp. St. 1913; § 997), for temporary injunctions to restrain orders of the Interstate Commerce Commission, but provided that no such temporary injunction should be issued by the Commerce Court otherwise than upon notice. This refers not to the notice mentioned in the succeeding section; the latter notice being the one required to obtain final jurisdiction to try the case. There is no provision in section 208 that temporary injunctions may not issue without the notice required to obtain final jurisdiction to proceed in the main case. This was amended by the Sixty-Third Congress. Act Oct. 22, 1913, c. 32, 38 Stat. 208, 219, 220 (Comp. St. 1913, § 998). This new act provides:

"When such application as aforesaid is presented to a judge, he shall immediately call to his assistance to hear and determine the application two other judges. Said application shall not be heard or determined before at least five days' notice of the hearing has been given to the Interstate Commerce Commission, to the Attorney General of the United States, and to such other persons as may be defendants in the suit."

Personally I am distinctly of the opinion, even if the other statute should be so construed that the power to grant a temporary injunction or to hear an application for a temporary injunction is withheld until after notice has been given in the main case, this statute distinctly provides that upon 5 days' notice it might be heard, and this had nothing whatever to do with whether jurisdiction had been acquired to try the main case or not.

I have read the unpublished opinions in the Ninth circuit that are furnished in manuscript form, but I cannot find anything that bears

upon this case. In those cases there was no notice under the statute. My Associates do not fully agree with me in this respect, and as this case must be disposed of upon other grounds, we decline to pass upon the question of jurisdiction raised by the government and the Interstate Commerce Commission, and pass to other matters in connection with the case.

[1] A motion is made by the express companies to dismiss this case. This motion in my judgment could not be heard before the three judges now sitting. The three judges are convened to hear the application for a temporary writ of injunction, not to determine whether the case should be dismissed upon its merits. If the motion had been filed before the application had been made, there would be no pretense that these three judges should sit to hear that question.

The motion to dismiss is one the majority of this court think must be submitted to the District Judge alone and be determined by him. That motion is not entirely free from difficulty. It is alleged in the bill that no legal evidence was taken before the Interstate Commerce Commission which would confer jurisdiction on it in this matter. Some of the judges are inclined to the opinion that it stated a legal conclusion; some that it stated an ultimate fact to be determined by the District Court. Whether he will determine it to-day or not is no affair of this court. When we come to the question as to whether the temporary injunction shall be granted or not a majority are agreed it cannot be done.

[2] The decision in the so-called Shreveport Case, the Houston & Texas Railway v. United States, 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341, and the same case when tried by the Commerce Court and found and reported in 205 Fed. 391 (in the lower court Hon. John E. Carland, now by assignment one of the judges of this circuit, was one of the judges), held that if intrastate rates were of such a character as to interfere with the free movement of interstate commerce, Congress had the power under the Constitution to take over the fixing of said rates to that extent, and had conferred that power on the Interstate Commerce Commission, and the Interstate Commerce Commission in this case, in practically the identical language used in the Shreveport Case, determined that the rates from these points in South Dakota were of such a character as to constitute a discrimination against Sioux City, and thereby interfered with the freedom of interstate commerce, and were subject therefore to be regulated by the Interstate Commerce Commission.

The majority have agreed that we cannot grant the temporary injunction as an emergency relief. Such injunctions are ordinarily granted before proofs are complete, and in determining whether to grant them or not, the court must consider the damages which would be sustained by the defendants if a writ of injunction did issue before proof, and the damages to be incurred by the complainants if it did not issue. As Sioux City has, according to the findings of the Interstate Commerce Commission, been suffering from this discrimination against it for about 2 years and 7 months, we cannot find that within the 30 or 60 days between this and the final hearing the South Dakota towns

will suffer more damage from the failure to grant this injunction than Sioux City would suffer from the granting of it. We are therefore inclined to the opinion that the temporary injunction should not be granted in this case. The presumption is that the Interstate Commerce Commission's determination was correct and valid. We cannot assume that that controversy would be determined in favor of the complainants against the Interstate Commerce Commission, and thus grant this injunction when the damages to Sioux City from the granting of the injunction would be substantially equal to the damages to the South Dakota towns by refusing it. We are therefore of the opinion that the application for a temporary writ of injunction must be denied. This makes it wholly unnecessary to pass upon the question of jurisdiction, and the motion to dismiss is for decision by the District Judge.

I now suggest that Judges REED and WADE express their views so far as desired.

WADE, District Judge.. So far as at present advised, I am of the opinion that if the proof were present of the actual service of this petition upon the Interstate Commerce Commission and the Department of Justice, even though less than 5 days before the hearing, we would have jurisdiction, although that is not a finding by which I would be held to be bound upon further investigation.

As I read this statute, I am rather inclined to think that the requirement of the service of the petition by filing in the Department of Justice and in the office of the Interstate Commerce Commission is mandatory, in order to acquire jurisdiction of the United States and the Interstate Commerce Commission; but in the view which I have of what should be the result in this case, it is unnecessary to pass upon the question here.

The cause of action set forth in this application involves, it may be said, three elements: One, that the Interstate Commerce Commission had no jurisdiction to make the order; another, that it had no evidence before it upon which to base the order; and another, that even if it had jurisdiction, the express companies could not fix rates without conferring with the railway commissioners of South Dakota.

In the view which I hold as to the other question in the case, which has been explained by Judge SMITH, it is not necessary for me to pass upon these questions. Of course I feel that no one can read the Shreveport Case and not be compelled to feel that it is the duty, at least of this court, to follow that case in holding that the Interstate Commerce Commission has the power to do what they did in the case at bar.

. I realize that the rule of that case must result in a new field of controversy between the nation and the states, but I feel that in time these relations between the nation and the states will be so adjusted that there will be no more conflict than is absolutely necessary; but I do believe, inasmuch as the law does not fix the manner in which the rates shall be adjusted under an order of this kind, but simply authorizes the Interstate Commerce Commission to announce that there is a dis-

crimination—and, as held in the Shreveport Case, that the Commission has the right to rectify that discrimination—that the spirit of comity between the nation and the state should require that the express companies should, in the exercise of the rights granted by the Interstate Commerce Commission, present their situation to the railway commission of the state, in order that the rate which they propose to put in force shall be a matter of public information, and that in order that the state commission may have a chance to adjust general rates in the state in such a way as to meet the situation as well as possible.

Upon the hearing here, it is disclosed that some steps were taken in this direction; but there is not sufficient in the record to justify me in saying that they have not taken the steps that would be required; the facts upon this matter not being fully disclosed. But again, it is not necessary to determine this question.

A temporary injunction is an extraordinary remedy. The modern tendency is to restrict it to cases where it is absolutely necessary, and where it can be granted without doing great injustice to any one. Now we have here, in this case, two conflicting interests, the interests of the merchants of South Dakota, and the interests of the merchants of Sioux City. Whichever way this case is decided, damage must result to some one; it may be to a greater or less degree, but somebody has to sustain damages. The condition of which Sioux City complains has existed now something more than 2 years. That the merchants of Sioux City are entitled to relief has been absolutely adjudicated by the Interstate Commerce Commission. If a temporary injunction should issue as prayed, the condition, so far as it affects and damages the merchants of Sioux City, must continue. It would be impossible to prescribe a plan which would enable them to recover the damage they would suffer, in case, upon final hearing, the temporary injunction should be dissolved, because their damage arises out of a loss of business or trade in such a way that it would be practically impossible to establish damages. On the other hand, if the injunction is denied, the merchants of South Dakota must suffer, but they suffer simply because they pay a higher rate to the express company than they should pay if they are right in this proceeding, and they have a cause of action to recover the excess charges.

It is therefore a question as to whether the merchants of South Dakota must suffer by our order, or the merchants of Sioux City must suffer. I realize that there may be a difference in the amount of damage which one group may suffer, compared with what the other may suffer. I do not hold that the amount is necessarily the same, but it is of the same character; it grows out of the same cause upon one side or the other. This court cannot act without imposing damages on somebody; it cannot refuse an injunction without injuring South Dakota; it cannot grant a temporary injunction without saying to Sioux City:

"You will have to continue to carry this burden which the Interstate Commerce Commission has decided you have been compelled illegally to carry since February, 1914, and you must continue to carry this burden without any possible chance of recovering damages which you may suffer."

This being the situation, I personally do not feel that it justifies action by a court of equity at this stage. I do not believe that a court should grant a temporary injunction unless there is irreparable injury to the complainants, and unless it can be granted without imposing irreparable injury upon some one else; and, it being impossible to grant a temporary injunction without imposing damages upon the merchants of Sioux City, as aforesaid, I do not believe that the court at this time should exercise its extraordinary power to restrain the defendants from proceeding under the order of the Interstate Commerce Commission.

For this reason, and without passing upon the other questions presented, I hold that the application for a temporary injunction should be denied.

REED, District Judge (dissenting). I am unable to agree with the opinions that have just been announced.

At the outset I may say that there seem to be some statements in the Shreveport opinion and other cases bearing upon the questions here that are not easily reconciled; but that is not my reason for disagreeing with the majority.

We are here to determine whether or not an interlocutory injunction should issue, practically against the defendant express companies, and for this reason the case is not now for hearing upon the merits. The majority of the court is of opinion that the three judges cannot now determine the merits, and with this I agree; but they go farther and say, as I understand them, that because the Interstate Commerce Commission and the Attorney General of the United States have not been served with the notice of this hearing for the required time (which is true so far as we now know), we cannot therefore determine the question of the jurisdiction of this proceeding as against them; that, I think, depends upon the statute providing for this court as now organized. The act of Congress, abolishing the Commerce Court and transferring its jurisdiction, so far as not repealed, upon the District Courts of the United States, was passed October 22, 1913, c. 32, 38 Stat. 219, 220 (Comp. St. 1913, § 998) which provides that:

"No interlocutory injunction suspending or restraining the * * * operation or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Commerce Commission shall be issued * * * by any District Court of the United States, or by any judge thereof, or by any Circuit Judge acting as District Judge, unless the application for the same shall be presented to a Circuit [Judge] or District Judge, and shall be heard and determined by three judges, of whom at least one shall be a Circuit Judge, and unless a majority of said three judges shall concur in granting such application."

That is the authority for calling together this court of three judges, and the act further provides that:

"Said application shall not be heard or determined before at least five days' notice of the hearing has been given to the Interstate Commerce Commission, to the Attorney General of the United States, and to such other parties as may be defendants."

It is said by the majority that this court as now constituted may not determine the question of the jurisdiction to hear this application, be-

cause all it can do rightly is to determine whether or not the application shall be granted by this court. But what is it that this court as now constituted is to determine? Let the statute itself answer:

"When such application as aforesaid is presented to a judge, he shall immediately call to his assistance to hear and determine the application two other judges."

The Interstate Commerce Commission and the Special Assistant to the Attorney General of the United States appear before us specially to object to the jurisdiction of this court to proceed with this hearing, because the notice required by law to be served upon them has not been given. In this I think they are right. What is to be done? Before this court can proceed against the Interstate Commerce Commission, and the government itself, it must give the required notice; that has not been done; but that only means that the court shall not proceed to determine the application until the required notice has been given to the Commission and the Attorney General, and amounts only to this: That the hearing of this application should be postponed until those parties have been served the required time before the hearing can proceed. But the majority say that we are not authorized to consider the question of the jurisdiction of the court. The statute requires that when an application for a temporary injunction is made the judge shall immediately call to his assistance *to hear and determine the application* two other judges. In my judgment it is the duty of this court as now constituted, when one or more of the parties to a proceeding of this nature comes before it and says that it is without jurisdiction of the proceedings, that the court should determine whether or not the court has jurisdiction of the proceedings. It cannot rightly avoid determining it by declining to rule upon the motion so presented, and determine the question upon some other ground.

In my opinion the majority of the court is in error in disposing of this hearing before the Interstate Commerce Commission and the government itself have been given the required notice, and in now declining to determine its jurisdiction as to them.

The majority also say that the question of determining this case upon its merits devolves upon the District Court. That may be true; and the express companies appear and present what is in effect a demurrer to the petition for want of equity. But the merits of the case are not now for hearing, and when the case comes on for final hearing that will then be determined by the District Court.

As to the question of a temporary injunction, I agree with the majority that the relative damages that may be sustained by one or the other of the parties may, and ordinarily should, be considered. But if any damage is likely to result to Sioux City, or any other party, the injunction should not be denied upon that ground, but should be granted, if the plaintiff is otherwise entitled thereto, upon the plaintiff giving proper security to indemnify the party against whom it shall issue against such damages as the granting of the injunction may cause. The plaintiffs are commercial clubs and jobbers in five of the largest cities and towns in South Dakota that will be seriously injured if the proposed increase of rates by the express companies is put into effect.

I cannot agree that this court as now constituted may not determine the question of the jurisdiction to grant a temporary injunction at the proper time.

It is apparent upon the face of the petition that jobbers in these five towns will be discriminated against if the proposed rates shall go into effect, and will suffer damages—how much I do not know. But whatever they may be, the plaintiffs may be required to give proper security that will indemnify those who will be damaged by the granting of the writ. If I was to now determine the question of the merits of the demurrers of the express companies to the petition, I might be inclined, as now advised, to overrule it; but that question, as before stated, is not now for determination.

I am constrained to dissent from the holding of the majority, denying the application for the preliminary injunction at this time.